UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARNELL MCCOY,<br><br>         Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>         Defendant. | Case No.: 1:12-cv-01080 - AWI - JLT<br><br>FINDINGS AND RECOMMENDATIONS GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DIRECTING ENTRY OF JUDGMENT IN FAVOR OF DEFENDANT, COMMISSIONER OF SOCIAL SECURITY, AND AGAINST PLAINTIFF DARNELL MCCOY |

Darnell McCoy asserts he is entitled to benefits under Titles II and XVI of the Social Security Act, and seeks judicial review of the decision denying his applications for benefits. For the reasons set forth below, the Court recommends the administrative decision be **AFFIRMED**, and Defendant's motion for summary judgment be **GRANTED**.

**PROCEDURAL HISTORY**[1]

Plaintiff filed applications for disability insurance benefits and supplemental security income on August 20, 2008, alleging disability beginning March 2, 2006. AR at 23. The Social Security Administration denied his claims initially and upon reconsideration. *Id.* After requesting a hearing, Plaintiff testified before an administrative law judge ("ALJ") on January 24, 2011. *Id.* at 23. The ALJ determined Plaintiff was not disabled under the Social Security Act, and issued an unfavorable

---

[1] Citations to the Administrative Record will be designated as "AR," followed by the appropriate page number.

1

decision, denying benefits on May 24, 2011. *Id.* at 20-30. The Appeals Council denied Plaintiff's request for review of the ALJ's decision on April 30, 2012. *Id*. at 4-7. Therefore, the ALJ's determination became the final decision of the Commissioner of Social Security ("Commissioner").

## STANDARD OF REVIEW

District courts have a limited scope of judicial review for disability claims after a decision by the Commissioner to deny benefits under the Social Security Act. When reviewing findings of fact, such as whether a claimant was disabled, the Court must determine whether the Commissioner's decision is supported by substantial evidence or is based on legal error. 42 U.S.C. § 405(g). The ALJ's determination that the claimant is not disabled must be upheld by the Court if the proper legal standards were applied and the findings are supported by substantial evidence. *Sanchez v. Sec'y of Health & Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938)). The record as a whole must be considered, because "[t]he court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion." *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

## DISABILITY BENEFITS

To qualify for benefits under the Social Security Act, Plaintiff must establish he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B). Once a claimant establishes a prima facie case of disability, the burden shifts to the Commissioner to prove the claimant is able to engage in substantial gainful employment. *Maounis v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984).

**ADMINISTRATIVE DETERMINATION**

To achieve uniform decisions, the Commissioner established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 404.1520, 416.920 (a)-(f). The process requires the ALJ to determine whether Plaintiff (1) engaged in substantial gainful activity during the period of alleged disability, (2) had medically determinable severe impairments (3) that met or equaled one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; and whether Plaintiff (4) had the residual functional capacity to perform to past relevant work or (5) the ability to perform other work existing in significant numbers at the state and national level. *Id.*

The ALJ must consider testimonial evidence and objective medical evidence. 20 C.F.R. §§ 404.1527, 416.927, 416.929. If the ALJ determines a claimant has no severe medically determinable impairments, the inquiry ends at step two. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.927(a)(4)(ii).

**A.   Relevant Medical Evidence**

Dr. Mary McDonald conducted a psychological evaluation of Plaintiff on October 20, 2008. AR at 194. Plaintiff believed he was "unable to work because he is very depressed." *Id.* Plaintiff "reported that his father recently died, his mother [was] very ill and infirmed and he lost three aunts in the past year." *Id.* Plaintiff "reported lethargy, apathy, lack of motivation and a lack of pleasure in activities that were once interesting and pleasurable to him." *Id.* Dr. McDonald administered the Bender Visual Motor Gestalt Test, II Edition; Wechsler Adult Intelligence Scale, III Edition; and Miller Forensic Assessment of Symptoms. *Id.* at 195. Plaintiff's test results were "within normal limits" on the Bender Visual Motor Gestalt Test and he had a full scale I.Q. of 80. *Id.* Dr. McDonald noted Plaintiff had a score of 9 on the Miller Forensic Assessment of Symptoms, which "suggest[ed] that he is exaggerating his mental health issues" because "[a] cut off of 6 is indicative of exaggerating one's mental health symptoms." *Id.* at 196. She diagnosed Plaintiff with a dysthymic disorder[2], and opined Plaintiff "appear[ed] quite capable of being able to understand directions and work in simple, routine labor." *Id.* Also, Dr. McDonald observed Plaintiff appeared depressed but found it was "difficult to

---

[2] Dysthymic disorder is a mood disorder characterized by "a [d]epressed mood for most of the day, for more days than not, as indicated either by subjective account or observation by others, for at least 2 years." *Am. Psychiatric Assn, Diagnostic and Statistical Manual of Mental Disorders*, 380 (4th ed. ).

tell the level of depression given the concern about his exaggeration." *Id.* Dr. McDonald concluded Plaintiff's "depression [was] not so severe that it would prevent him from being able to work." *Id.*

On November 6, 2008, Dr. Norman Zukowsky completed a psychiatric review technique. AR at 201. According to Dr. Zukowsky, Plaintiff presented "insufficient evidence" for him to determine whether Plaintiff had a severe mental impairment. *Id.*

On December 16, 2008, Plaintiff had an initial assessment by Drs. Angela Cristano and Elizabeth Gibbons at Tulare County Health & Human Services Agency. AR at 260-65. The physicians noted Plaintiff was "suffering from depressive symptoms" and Plaintiff reported he slept excessively, had difficulty concentrating, and "experience[d] anxiety due to his girlfriend's possibly pregnancy." *Id.* at 264. Drs. Cristano and Gibbons opined Plaintiff's "mental illness does not greatly impair his ability to function in society" and that he "would benefit from increased involvement in pleasurable activities." *Id.* Although they gave him a GAF score of 50[3], the physicians opined Plaintiff "[did] not meet the requirement for medical necessity." *Id.* at 264-65.

Dr. Gene Libunao performed a comprehensive psychiatric evaluation on July 10, 2009. AR at 279. Plaintiff reported he had a "variable mood" as well as "poor concentration and poor sleep." *Id.* Dr. Libunao observed: Plaintiff "demonstrated inconsistency in concentration, persistence and pace throughout the interview. At points during the interview, he appeared to have flattened affect, with poor understanding of questioning and at times he was able to answer questions directly and deliberately." *Id.* at 280-81. Dr. Libunao tested Plaintiff's memory and determined Plaintiff "was able to recall 3/3 objects immediately" and "2/3 objects after give minutes." *Id.* at 281. In addition, Dr. Libunao asked Plaintiff several questions to evaluate his ability to concentrate and Plaintiff's insight and judgment. *Id.* at 281-82. He diagnosed Plaintiff with a mood disorder, not otherwise specified. *Id.* at 282. Dr. Libunao found Plaintiff had "the ability to perform simple and repetitive tasks, as well as detailed and complex tasks." *Id.* Further, he opined Plaintiff was able to "maintain regular attendance in the workplace and

---

[3] GAF scores range from 1-100, and in calculating a GAF score, the doctor considers "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders*, 34 (4th ed.). A GAF score between 41-50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairments in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." *Id.* at 34.

complete a normal workday/ workweek without interruptions from a psychiatric condition." *Id.*

Dr. Middleton reviewed the record on July 23, 2009. AR at 283-98. In a psychiatric review technique, Dr. Middleton indicated his analysis was based upon Listing 12.04, which governs affective disorder, and he believed an RFC would be necessary. *Id.* at 288. He opined Plaintiff had "moderate" restrictions of activities of daily living; "mild" difficulties in maintaining social functioning; and "moderate" difficulties in maintaining concentration, persistence, or pace. *Id.* at 296. Upon assessing Plaintiff's mental RFC, Dr. Middleton indicated Plaintiff was "not significantly limited" in all areas, including his understanding and memory, concentration and persistence, social interaction, and adaptation. *Id.* at 285-86. Dr. Middleton concluded Plaintiff's mental RFC was "unlimited." *Id.* at 284.

On January 4, 2011, Dr. Edwyn Ortiz-Nance, Plaintiff's treating physician at Synchrony of Visalia who began treating Plaintiff that day, completed a medical questionnaire. AR at 487. Dr. Ortiz-Nance opined Plaintiff had "moderate" restriction of activities of daily living, "moderate" difficulties in maintaining social functioning; and "moderate" difficulties in maintaining concentration, persistence, or pace. *Id.* at 481. In addition, Dr. Ortiz-Nance opined Plaintiff had a "marked" ability to relate and interact with co-workers and supervisors, to "understand, remember, and carry out an extensive variety of technical and/or complex job instructions," and "to maintain concentration and attention for two hour increments." *Id.* He believed Plaintiff had "extreme" limitations with his ability to deal with the public and withstand the stress and pressures associated with a normal workday. *Id.*

Dr. Ortiz-Nance examined Plaintiff on February 16, 2011, upon request of a psychological evaluation for his pending Social Security application. AR at 488. Dr. Ortiz-Nance administered the Wechsler Abbreviated Scale of Intelligence test, upon which Plaintiff had a full scale I.Q. of 55. *Id.* at 489. However, Plaintiff got an "F" on the Minnesota Multiphasic Personality Inventory test, which indicated the results were invalid. *Id.* Dr. Ortiz-Nance diagnosed Plaintiff with a major depressive disorder, severe with psychotic features. *Id.* at 489. To Dr. Ortiz-Nance, it appeared Plaintiff was "to a measurable degree, exaggerating his behavioral presentation" and could be "faking bad." *Id.* at 490. According to Dr. Ortiz-Nance, "Based upon testing results, [Plaintiff] has no capacity for independent living (extremely limited self care skills, limited social interaction skills, and currently unemployable). *Id.* at 491.

**B.      Administrative Hearing Testimony**[4]

Plaintiff testified at the administrative hearing held on January 24, 2011.  AR at 509.  Plaintiff reported he graduated from high school and took classes in criminal justice at a community college, though he passed only one course.  *Id.* at 514.  In addition, Plaintiff did "weekend warrior drills" in high school with the National Guard, of which he was a part for one year.  *Id.* at 517-18.

He stated he last worked in 2008 at a part-time security job.  AR at 515.  According to Plaintiff he was let go from the security position because other employees complained about hearing him talking to himself, although Plaintiff did not recall doing so.  *Id.* at 521.  Plaintiff believed he could not work because he had "pain in [his] leg," and sometimes he did not "even have the energy to get out of the bed."  *Id.*  He estimated "20 days out of the month" he lacked the energy to "get washed up."  *Id.* at 523. Plaintiff reported sometimes he slept "the entire day' and had memory problems.  *Id.* at 522-23.

Plaintiff testified he saw a physician once a week for treatment of his depression.  AR at 523. Plaintiff explained his depression interfered with his ability to work because he would talk to himself and "hear voices" every night.  *Id.* at 524.  Further, Plaintiff reported he did not "like being around too many people," and would no longer go to the movies as a result.  *Id.* at 525.

**C.      Third Party Function Report**

Plaintiff's mother, Jeraldine McCoy, completed an assessment of Plaintiff's functioning on September 29, 2008.  AR at 123-30.  Ms. McCoy noted Plaintiff "ha[d] to be asked numerous times to complete requested task[s].  *Id.* at 125.  She explained that if she sent him to get groceries, "he call[ed] 50 times" before the shopping was completed.  *Id.* at 125-26.  Ms. McCoy noted Plaintiff socialized with his peers everyday via phone and email.  *Id*.  She believed her son could pay attention for "about 5 mins" and that he "need[ed] to have written instructions explained to him several times," though he followed spoken instructions "very well."  *Id.* at 128.  Ms. McCoy observed her son does not handle stress well, and could "begin[] to shake with to (sic) much stress."  *Id.* at 129.

---

[4] The ALJ rejected the credibility of Plaintiff's subjective complaints, and Plaintiff does not challenge the adverse credibility determination.  The Court will "review only issues with are argued specifically and distinctly."  *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003).  When a claim of error is not argued and explained, the issue has been waived.  *See, id*. at 929-30.  Because Plaintiff has waived the issue of his credibility, Plaintiff's testimony is summarized only to provide a context of his mental impairment allegations.

**D.     The ALJ's Findings**

Pursuant to the five-step process, the ALJ determined Plaintiff did not engage in substantial gainful activity after the alleged onset date of March 2, 2006. AR at 25. At step two, the ALJ found Plaintiff's mood disorder, not otherwise specified, was a medically determinable impairment. *Id.* The ALJ noted Plaintiff had other diagnoses, but determined his "inconsistent history, presentation, 'faking bad,' and possible malingering discredit most opinions." *Id.* Further, the ALJ determined Plaintiff's mental impairment did not significantly limit his ability to perform basic work-related activities. *Id.* at 26. Accordingly, that ALJ determined Plaintiff "does not have a severe impairment or combination of impairments," and ended the analysis at step two. *Id.* The ALJ concluded Plaintiff "ha[d] not been under a disability, as defined by the Social Security Act, from March 2, 2006, though the date of th[e] decision." *Id.* at 30.

## DISCUSSION AND ANALYSIS

Plaintiff contends "[t]he ALJ erred at step two" of the sequential evaluation. (Doc. 17 at 9). The inquiry at step two is a *de minimus* screening "to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citing *Bowen v. Yucket*, 482 U.S. 137, 153-54 (1987)). The purpose is to identify claimants whose medical impairment makes it unlikely they would be disabled even if age, education, and experience are considered. *Bowen*, 482 U.S. at 153 (1987). A claimant must make a "threshold showing" (1) he has a medically determinable impairment or combination of impairments and (2) the impairment or combination of impairments is severe. *Id.* at 146-47; *see also* 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment, or combination thereof, is "not severe" only if the evidence establishes it has "no more than a minimal effect on an individual's ability to do work." *Smolen*, 80 F.3d at 1290. For an impairment to be "severe," it must significantly limit the claimant's ability to do basic work activities, or the "abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1520(c), 416.920(c), 416.921(b).

**A.     As explained by the ALJ, the evidence Plaintiff identifies does not support a finding that his impairment was severe.**

Without identifying any specific error in the ALJ's analysis, Plaintiff points to evidence in the record he alleges demonstrates that "the medical evidence 'did not clearly establish nonseverity.'"

7

(Doc. 17 at 6, 8). Indeed, the *only* mention of the ALJ in Plaintiff's argument has to do with the ALJ's comments at the hearing regarding GAF scores. (*See* Doc. 17 at 5-9).

The Ninth Circuit "has repeatedly admonished that [it] cannot 'manufacture arguments for an appellant.'" *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) (quoting *Greenwood v. Fed. Aviation Admin.*, 28 F.3d 971, 977 (9th Cir. 1994)). Rather, the Court will "review only issues with are argued specifically and distinctly." *Id.* When a claim of error is not argued and explained, the argument is waived. *See, id*. at 929-30 (holding that party's argument was waived because the party made only a "bold assertion" of error, with "little if any analysis to assist the court in evaluating its legal challenge"); *see also Hibbs v. Dep't of Human Res.*, 273 F.3d 844, 873 n.34 (9th Cir. 2001) (finding an allegation of error was "too undeveloped to be capable of assessment"). Plaintiff fails to identify or discuss any alleged error in the ALJ's evaluation of the medical opinions of Drs. Ortiz-Nance, McDonald and Libunao. Likewise, Plaintiff does not address the ALJ's evaluation of the lay witness report of Ms. McCoy or the credibility of his subjective complaints. Accordingly, Plaintiff has waived these issues.

Although Plaintiff identifies evidence in the record to support a finding that his mental impairments are severe, "the existence of such evidence does not undermine the ALJ's findings." *See Gallardo v. Astrue*, 2008 U.S. Dist. LEXIS 84059, at *30 (E.D. Cal. Sept. 10, 2008). The ALJ examined the evidence, as explained below, and determined Plaintiff failed to carry his burden at step two. Previously, this Court explained: "The role of this Court is not to second guess the ALJ and reevaluate the evidence, but rather it must determine whether the decision is supported by substantial evidence and free of legal error." *Gallardo*, 2008 U.S. Dist. LEXIS 84059, at *30; *see also German v. Comm'r of Soc. Sec.,* 2011 U.S. Dist. LEXIS 25691, at *11-12 (E.D. Cal. Mar. 14, 2011) ("[i]t is not for this court to reevaluate the evidence").

1.      Dr. Ortiz-Nance

Plaintiff notes Dr. Ortiz-Nance "recorded observations supporting a depressive disorder and anxiety, causing extreme limitations in social functioning" and diagnosed Plaintiff with PTSD and Major Depressive Disorder, Rule Out ADHD. (Doc. 17 at 8) (citing AR at 479-87, 490). Importantly, the ALJ gave "no weight" to the conclusions of Dr. Ortiz-Nance regarding Plaintiff's limitations. AR

at 28. The ALJ determined the findings were "inconsistent with Dr. Ortiz-Nance's own report, the medical record overall, and the claimant's mother's report." *Id.* Plaintiff does not challenge the ALJ's assessment of the opinion, which was rejected for specific, legitimate reasons. *See, e.g., Tommasetti v. Astrue,* 533 F.3d 1035, 1041 (9th Cir. 2008) (opinion of a treating physician may be rejected where an ALJ finds incongruity between the treating doctor's assessment and his own medical records); *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 603 (9th Cir. 1999) (internal inconsistencies within a physician's report supports the decision to discount the opinion of a physician); *Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2003) (an ALJ may reject a medical opinion when it is "unsupported by the record as a whole"). Accordingly, the ALJ determined the assessment of Dr. Ortiz-Nance does not support a determination that Plaintiff had a severe mental impairment.

### 2. Lay witness report

Plaintiff contends the lay witness testimony of Ms. McCoy, his mother, supports a finding that his mental impairment is severe. (Doc. 17 at 6). According to Plaintiff, Ms. McCoy "reported firsthand observations of Plaintiff's behavior" and she "observed [Plaintiff] was always nervous, slept 4 hours, needed reminders concerning his hygiene, had to be asked numerous times to complete tasks, that he shook when under too much stress, that he needed written instructions explained, and that he could not concentrate longer than 5 minutes." *Id.* (citing AR 123-31).

Significantly, however, the ALJ gave "little weight" to the statement of Ms. McCoy regarding Plaintiff's limitations because it "was not consistent with consultative psychiatrists' reports . . . and treating sources records regarding function." AR at 28. Plaintiff has not challenged the rejection of the testimony. The testimony of a lay witness may be discounted when an ALJ identifies specific, germane reasons for rejecting the opinion of the witness, *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993), and "[o]ne reason for which an ALJ may discount lay testimony is that it conflicts with medical evidence." *Lewis v. Apfel*, 236 F3d 503, 511-12 (9th Cir. 2001). Because the ALJ discounted the lay testimony of Ms. McCoy, it does not support a finding that Plaintiff's mental impairment was severe.

### 3. School records

Plaintiff observes that his former school counselor, Karen Carlstrom, indicated Plaintiff had "a specific learning disability." (Doc. 17 at 4) (citing AR at 165). However, as Plaintiff acknowledges,

9

"Ms. Carlstrom presumably could not diagnose, because she was not an acceptable medical source." *Id.* at 7. Further, the ALJ considered Plaintiffs "history of a learning disorder" and determined it did not support a determination that his mental impairment had a more than minimal effect on his ability to perform basic work activities because "he graduated, went to community college to study criminal justice, and passed a course." AR at 29.

Even if Plaintiff was diagnosed with a learning disorder, this is insufficient to show his mental impairment was severe. Previously, this Court explained: "A mere recitation of a medical diagnosis does not demonstrate how that condition impacts plaintiff's ability to engage in basic work activities. Put another way, a medical diagnosis does not an impairment make." *Nottoli v. Astrue*, 2011 U.S. Dist. LEXIS 15850, at *8 (E.D. Cal. Feb. 16, 2011); *Huynh v. Astrue*, 2009 U.S. Dist. LEXIS 91015, at *6 (E.D. Cal. Sept. 30, 2009); *see also Matthews v. Shalala*, 10 F.3d 678 (9th Cir. 1993) ("The mere existence of an impairment is insufficient proof of a disability").

4.     GAF scores

Plaintiff argues the GAF score of 50 as assessed by Drs. Cristano and Gibbons on December 16, 2006 supports a finding that his mental impairment is severe. (Doc. 17 at 6). Plaintiff observes, "At the hearing, the ALJ asserted that SSA does not use GAF scores, although doctors may for their own purposes." *Id.* at 6-7 (citing AR at 530). However, Plaintiff contends: "The Ninth Circuit uses GAF scores and so must this Court, at least for the purpose of step two severity analysis." *Id.* at 7 (citing *Brewes v. Comm'r of SSA*, 682 F.3d 1157, 1161 n.2 (2012)).

In *Brewes*, although the ALJ determined the claimant was "not entirely credible," the Ninth Circuit determined the testimony of her subjective complaints "was largely consistent with the medical record," in part due to the GAF scores assessed by her physicians. *Id.*, 682 F.3d at 1160. Notably, the GAF assessment of Drs. Cristano and Gibbons was based upon Plaintiff's subjective complaints (*see* AR at 260-65), and the ALJ found Plaintiff's "allegations [were] not credible." AR at 239.

**B.     The ALJ's analysis is supported by substantial evidence in the record.**

The opinions of examining physicians, such as Drs. McDonald and Libunao, may be substantial evidence in support of the ALJ's decision when the opinions are based upon independent clinical findings. *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149

10

(9th Cir. 2001). Likewise, the opinions of non-examining physicians may be substantial evidence in support of an ALJ's evaluation of the evidence. *Tonapetyan*, 242 F.3d at 1149 (the opinion "of a non-examining medical expert . . . may constitute substantial evidence when it is consistent with other independent evidence in the record").

### 1. Dr. McDonald

Plaintiff asserts, "Although [Dr. McDonald] did not state unequivocally that Plaintiff had severe dysthymia, she did diagnose a severe mental impairment." (Doc. 17 at 6). Significantly, this misstates the report she prepared after the examination. Dr. McDonald did not diagnose Plaintiff's mental impairment as "severe." To the contrary, as noted by the ALJ, Dr. McDonald opined Plaintiff's "depression was **not so severe** that it would prevent him from working." AR at 28 (citing AR at 196), emphasis added. This opinion was given "great weight" by the ALJ. *Id.*

Dr. McDonald tested Plaintiff's intelligence and administered the Bender Visual Motor Gestalt Test, and did not identify any work limitations for Plaintiff. AR at 195. Because her findings were based upon independent clinical findings, Dr. McDonald's opinion is substantial evidence in support of the ALJ's determination that Plaintiff's mental impairments were not severe. *Orn*, 495 at 632; *Tonapetyan*, 242 F.3d at 1149.

### 2. Dr. Libunao

Plaintiff observes Dr. Libunao "diagnosed Mood Disorder NOS and rated the GAF at 55, indicating moderate impairment in social and occupational functioning." (Doc. 17 at 8) (citing AR at 282). Though Plaintiff contends there was "ambiguity in Dr. Libunao's opinion" because he "found no limitations while also finding moderate impairment" (Doc. 17 at ), "'moderate' and 'mild' limitations, by definition, are not severe." *Dixon v. Astrue*, 2013 U.S. Dist. LEXIS 65115, at *30 (N.D. Cal. May 6, 2013) (citing *Landa v. Astrue*, 283 Fed. App'x. 556, 558 (9th Cir. 2008)).

As noted by the ALJ, Dr. Libunao "opined [Plaintiff] had no limitations" in spite of diagnosing Plaintiff with a mood disorder. AR at 28. Specifically, Dr. Libunao concluded Plaintiff had "the ability to perform simple and repetitive tasks, as well as detailed and complex tasks." *Id*. at 282. Further, he opined Plaintiff was able to "maintain regular attendance in the workplace and complete a normal workday/workweek *without interruptions from a psychiatric condition*." *Id.* (emphasis added).

11

Dr. Libunao's opinion was given "great weight" by the ALJ. *Id.* Because the opinion was based upon independent clinical findings—including tests of Plaintiff's memory, judgment, and judgment, his opinion that Plaintiff had no limitations is substantial evidence in support of the ALJ's determination that Plaintiff's mental impairments were not severe. *Orn*, 495 at 632; *Tonapetyan*, 242 F.3d at 1149.

### C.     Dr. Middleton

Dr. Middleton, a non-examining physician, reviewed the record and opined Plaintiff was "not significantly limited" in *all* areas, including understand and memory, concentration and persistence, social interaction, and adaptation. AR at 296. According to Dr. Middleton, Plaintiff's mental RFC was "unlimited." *Id.* at 284. Because this is consistent with the opinions of Drs. McDonald and Libunao, it is substantial evidence in support of the ALJ's determination that Plaintiff's mental impairment was not severe. *See Tonapetyan*, 242 F.3d at 1149.

## FINDINGS AND RECOMMENDATIONS

As explained above, Plaintiff did not identify any specific error by the ALJ in his analysis, but only attempted to identify evidence that supported a determination that his medically determinable impairment was severe. However, the ALJ determined Plaintiff did not carry his burden at step two to show a severe impairment, even considering the evidence identified by Plaintiff. This determination is supported by substantial evidence in the record, including the opinions of Drs. McDonald and Libunao who examined Plaintiff and determined his mental impairment did not cause work limitations, and non-examining physician Dr. Middleton. Because the ALJ applied the proper legal standards and his evaluation of the evidence is supported by substantial evidence in the record, his conclusion at step two that Plaintiff's mental impairment was not severe should be upheld by the Court. *See Sanchez*, 812 F.2d at 510.

Accordingly, **IT IS HEREBY RECOMMENDED**:

1. The decision of the Commissioner of Social Security be **AFFIRMED**;
2. Defendant's motion for summary judgment be **GRANTED**; and
3. The Clerk of Court be directed to enter judgment in favor of Defendant, Commissioner of Social Security, and against Plaintiff Darnell McCoy.

///

These Findings and Recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within 14 days of the date of service of these Findings and Recommendations, any party may file written objections with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the Objections shall be filed and served within 14 days of the date of service of the Objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Judge's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **July 30, 2013**                             **/s/ Jennifer L. Thurston**
                                                                  UNITED STATES MAGISTRATE JUDGE